IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

'06 MAR 15 P 3: 44

CLERK'S OFFICE
BALTIMORE

_____DEPUTY

ERROL LEROY LEWIS,        :
          Plaintiff       :
     v.                   :     CIVIL ACTION NO. L-05-1269
                          :
UNITED STATES OF AMERICA  :
          Defendant       :

## MEMORANDUM

Errol Leroy Lewis ("Lewis") challenges, on due process grounds, the government's forfeiture of a watch that he claims to own. Pending is the government's motion to dismiss or, in the alternative, for summary judgment. The motion must be denied. As is discussed more fully below, the ample case law supports the propositions that (i) the Court should construe a Rule 41(e) motion as a motion to set aside forfeiture pursuant to 18 U.S.C. § 983(e), and (ii) when a forfeiture notice to a prisoner is returned undelivered, the government has an obligation to take steps to locate him and to send the notice to the prison where he is being housed. Moreover, under the facts of this case, the notice of forfeiture that was mailed to Lewis's girlfriend does not serve as notice to Lewis.

## I.    Introduction

The Drug Enforcement Administration ("DEA") seized a watch from a condominium where it arrested Lewis for drug violations. The DEA later initiated proceedings to forfeit the watch on the ground that it constitutes the proceeds of drug sales. The DEA sent notices of the proposed forfeiture, addressed to Lewis and his various aliases,[1] to the condominium where the watch was seized and to a state prison where federal detainees are often housed. These notices

---

[1] According to the United States, Lewis has a variety of aliases, including (i) Andrew Campbell, (ii) Darron Finley, (iii) Delroy Willis, (iv) Errol Moore, (v) Floyd Sinclaire Wilson, and (vi) Myrie and Trevor Moore.

 C/M CHAMBERS_____ 3 -/5- 06

 SCANNED

were returned undelivered. Approximately a year later, Lewis learned from his girlfriend, who had received a separate notice from the DEA, that his watch had been forfeited. After he was convicted and sentenced for the underlying drug charges, Lewis filed suit, contending that the DEA had failed to provide him adequate notice before forfeiting the watch.

The DEA moved to dismiss Lewis's suit, arguing that the Court lacks jurisdiction over the case and that Lewis's complaint fails to include the necessary allegations for a due process claim. The Court, construing Lewis's papers liberally, finds that the Court has jurisdiction and that Lewis has stated a proper claim. Accordingly, the Court will deny the motion to dismiss.

The DEA also moved for summary judgment on the grounds that Lewis has no evidence that he owns the watch and that, in any event, the undisputed facts show that the DEA provided proper notice to Lewis. The Court disagrees that the existing record supports summary judgment in the government's favor. Lewis has filed an affidavit in which he states that he owns the watch. There is, therefore, a dispute of fact regarding ownership. In addition, the notices that the DEA sent to Lewis were returned undelivered, and the notice to his girlfriend was insufficient to notify him of the proceedings. Based on the current record, then, the Court concludes that notice was inadequate. Accordingly, the Court will deny the motion for summary judgment, with leave to re-file, at the end of discovery, with an explanation of the efforts, if any, that the DEA took to apprise Lewis of the pending forfeiture after the notices were returned undelivered.

## II.    Facts

### A.    DEA Seizes Property

In 1996, Lewis was indicted by a federal grand jury for drug offenses. He was a fugitive until November 14, 2003, when DEA agents arrested him at his girlfriend's condominium in

Laurel, Maryland.   After the arrest, DEA agents seized jewelry, including a Rolex watch, from

the residence.  On November 19, 2003, Lewis was arraigned in federal court and ordered

detained pending trial.

## B.     DEA Initiates Administrative Forfeiture

Contending that the jewelry constitutes the proceeds of drug sales, the United States

initiated forfeiture proceedings in November 2003.[2]  Because the jewelry was valued at less than

$500,000, the United States was allowed to administratively forfeit the jewelry without court

involvement.[3]  (See Docket No. 5, Ex. A(1) (stating property valued at $21,500).)

Before it may administratively forfeit property, the DEA must (i) publish notice of its

intention to forfeit the property "once a week for at least 3 successive weeks in a newspaper of

general circulation in the judicial district in which the processing for forfeiture is brought" and

(ii) send written notice "to each party who appears to have an interest in the seized article."  19

U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a).  The government may declare the property forfeited if

no person files a timely claim for the property.[4]  If a timely claim is filed, the government must

apply to court to pursue forfeiture.[5]

## C.     DEA's Notice of Forfeiture

The DEA prepared the following notices regarding the jewelry:  (i) written notices for

---

[2]  See 21 U.S.C. § 881(a) (stating that such property is subject to forfeiture).

[3]  See 19 U.S.C. § 1607(a).  Although on its face 19 U.S.C. § 1607 applies to forfeitures under customs laws, the drug statutes specifically provide that the procedures set forth in § 1607 likewise apply to administrative forfeitures in drug cases.  See 21 U.S.C. § 881(d).

[4]  19 U.S.C. § 1609.

[5]  Id. § 1608; see also United States v. Minor, 228 F.3d 352, 354 (4th Cir. 2000).

mailing to Lewis and his girlfriend, and (ii) a notice for publication in the <u>Wall Street Journal</u>. The notices explained the procedure for filing a claim with the DEA in order to contest forfeiture. The written notices provided a deadline of January 21, 2004 for filing a claim, while the published notice stated a February 11, 2004, deadline.[6]

### 1.    Mailed Notice

On December 17, 2003, the DEA sent written notice of the proposed forfeiture by certified mail, return receipt requested, to the following three addresses:

(i) <u>3207C Ivy Wood Lane, Laurel, MD 20724.</u> Eight separate notices, each addressed to Lewis or one of his aliases, were mailed to this address.[7] The government proffers that this is the condominium owned by Lewis's girlfriend, Lisa Shelton, and is where Lewis was arrested and the jewelry seized. On January 12, 2004, the U.S. Postal Service returned all eight notices, each stamped "RETURNED TO SENDER. UNCLAIMED." (<u>See</u> Docket No. 5, Ex. A(1)-(2), (5)-(18).)

(ii) <u>MCAC, 401 East Madison Street, Baltimore, MD 21202.</u> The DEA mailed one notice, addressed to Lewis, to the Maryland Correctional Adjustment Center ("MCAC"), where

---

[6] By statute, the deadline for filing a claim depends on whether the interested party receives the written notice or learns of the proposed forfeiture by reading the notice in the newspaper. <u>See</u> 18 U.S.C. § 983 (discussing the deadlines for filing a claim depending on whether the interested party receives the mailed notice or not).

[7] A separate notice was mailed to each of the following eight aliases used by Lewis: (i) "Andrew Campbell aka Darron Finley,  Delroy Willis, Errol Lewis, Errol Moore, Floyd Sinclaire Wilson, Myrie and Trevor Moore," (ii) "Myrie," (iii) "Errol Moore," (iv) Errol Lewis," (v) "Darron Finley," (vi) "Trevor Moore," (vii) "Floyd Sinclaire Wilson," and (viii) "Delroy Willis." (<u>See</u> Docket No. 5, Ex. A(1)-(2), (5)-(18).)

federal detainees are often housed.[8]   According to the docket in Lewis's criminal case, L-96-0484, on November 19, 2003, Magistrate Judge Susan Gauvey ordered Lewis detained pending trial.  The docket does not reflect that the detention order was ever lifted.  Accordingly, it appears that Lewis was in pretrial detention when the DEA mailed the notice.  The record, however, does not reflect where Lewis was housed at the time.  The U.S. Postal Service returned the notice that the DEA had mailed to MCAC.  The envelope was stamped "RETURNED TO SENDER," with a handwritten notation, "GONE."  (See id., Ex. A(3)-(4).)

(iii)  4573 Derby Manor Drive, Baltimore, MD 21202.  This notice was addressed to Lewis's girlfriend, Lisa Marie Shelton.  The notice listed the jewelry that had been seized from Ms. Shelton's condominium and advised her of the steps that she could take to file a claim for the jewelry.  (See id., Ex. A(19).)  The notice did not tell Ms. Shelton to forward the notice to Lewis or to otherwise contact him regarding the proposed forfeiture.  On December 19, 2003, an individual signed in the "Signature" block and accepted delivery of the notice.[9]  (See id., Ex. A(19)-(20).)

## 2.     Published Notice

On December 29, 2003, January 5, 2004, and January 12, 2004, the DEA published notice of the pending forfeiture in the Wall Street Journal.  (See id., Ex. A at 4, Ex. A(21).)

---

[8]  The notice was addressed to:  "Andrew Campbell, Prisoner ID No. 41060037, aka Darron Finley, Delroy Willis, Errol Lewis, Errol Moore, Floyd Sinclaire Wilson, Myrie and Trevor Moore."  (See Docket No. 5, Ex. A(3)-(4).)

[9]  Although the signature is only somewhat legible, it appears that someone with the last name "Shelton" signed the receipt.  (See Docket No. 5, Ex. A(20).)

### D.       Lewis Files Suit, Alleging Insufficient Notice

On January 13, 2004, Lewis's girlfriend, Ms. Shelton, filed a claim to the jewelry. (See

id., Ex. A(22).)  According to the government, the DEA and Ms. Shelton reached a settlement,

whereby the government returned all of the property to Ms. Shelton, except for the watch, which

the government forfeited.

On February 19, 2004, Lewis pled guilty to conspiring to distribute marijuana.  On May

19, 2004, the Court sentenced Lewis to 96 months imprisonment.  In early 2005, Ms. Shelton

visited Lewis in prison and told him that his watch had been forfeited.  (See Docket No. 7, Ex.

1.)  According to Lewis, this was the first time he had heard of the forfeiture.  (Id.)

Several months later, on May 9, 2005, Lewis filed a Motion For Return Of Seized

Property Pursuant To Rule 41(e).  Although Lewis filed the motion in his criminal case, the

Court interpreted his motion as a civil complaint for equitable relief and opened the instant civil

suit.[10]  Lewis claims that neither he nor his attorney received notice of the proposed forfeiture,

and he asks the Court to order the DEA to return the watch to him.  In lieu of filing an answer to

Lewis's suit, the government filed the instant motion to dismiss or, in the alternative, for

summary judgment.  As discussed below, the Court rejects the arguments raised in the

government's motion.

## III.    Analysis

### A.       The District Court Has Jurisdiction Over the Case

Generally, a district court lacks jurisdiction over administrative forfeiture proceedings.

An exception exists, however, when a party alleges that the government failed to provide him

---

[10]  Lewis subsequently paid the civil filing fee.

adequate notice of the forfeiture and, as a result, violated his due process rights.[11]  In 2000,

Congress explicitly wrote the exception into law, stating in 18 U.S.C. § 983(e) that an aggrieved

party may move the court to set aside the forfeiture.[12]  If it grants such a motion, the court shall

"set aside the declaration of forfeiture as to the interest of the moving party without prejudice to

the right of the Government to commence a subsequent forfeiture proceeding."  18 U.S.C.

§ 983(e)(2)(A).

The DEA argues that Lewis has not filed a § 983(e) motion and that, as a result, this

Court lacks subject matter jurisdiction.  Lewis brought his motion under Rule 41(e) of the

Federal Rules of Criminal Procedure,[13] rather than § 983(e).   Although the DEA is correct that

Lewis cited to the wrong authority, the DEA ignores the case law instructing courts to construe a

------------------------

[11]  See Unites States v. Minor, 228 F.3d 352, 355-57 (4th Cir. 2000); Ibarra v. United States, 120 F.3d 472, 474-76 & n.4 (4th Cir. 1997).

[12]  The Civil Asset Forfeiture Reform Act of 2000 provides:

> Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if–
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1).

[13]  Rule 41(e), which is now Rule 41(g), provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g).

Rule 41(e) motion complaining about a lack of notice as a motion seeking to set aside a forfeiture

because of due process violations.[14]   In accordance with the case law, the Court will treat Lewis's

pleading as a motion to set aside forfeiture pursuant to 18 U.S.C. § 983(e).

### B.   Lewis's Allegations Are Sufficient

The DEA contends that Lewis has failed to allege the following statutory elements:

(i) that he has an interest in the watch, (ii) that the government failed to take reasonable steps to

provide him with notice, and (iii) that he did not know or have reason to know of the seizure

within sufficient time to file a timely claim.  See 18 U.S.C. § 983(e).

The Court recognizes that Lewis's motion is bare.  In response to the government's

motion to dismiss, however, Lewis filed an opposition brief with an affidavit attached.  When

read together, Lewis's papers state that: (i) he owns the 18 karate yellow gold diamond Rolex

watch that was seized from Ms. Shelton's condominium at the time of his arrest, (ii) he bought

the watch in Jamaica in 1994, (iii) although the government knew that Lewis was incarcerated, it

---

[14]   See Gonzalez-Gonzalez v. United States, 257 F.3d 31, 35 (1st Cir. 2001) ("[D]istrict courts retain the authority to entertain constitutional challenges to administrative forfeitures.  The fact that a claimant cloaks his constitutional challenge in the garb of a Rule 41(e) motion does not alter this reality; in that event, the court simply will treat such a motion as a civil complaint."); United States v. Minor, 228 F.3d 352, 355-56 & n.3 (4th Cir. 2000) (although plaintiff filed his action in district court as one under Rule 41(e), the Fourth Circuit held that jurisdiction existed to consider plaintiff's due process challenge concerning the adequacy of notice of an administrative forfeiture); United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996) ("But the fact that Clark brought his motion in the district court under Rule 41(e) does not defeat the district court's jurisdiction to hear a due process challenge.  Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." (internal quotations and citations omitted)); see also Dusenbery v. United States, 534 U.S. 161, 165 (2002) (noting that appeals court below had ruled that the district court abused its discretion by not construing a Rule 41(e) motion as a "civil complaint seeking equitable relief for a due process challenge to adequacy of the notice of the administrative forfeiture").

made no efforts to find him when the notice it had mailed to MCAC was returned undelivered, and (iv) he did not know about the forfeiture until Ms. Shelton visited him in early 2005. Construing Lewis's papers liberally, the Court finds that he has alleged a § 983(e) claim.

### C.       Summary Judgment Is Inappropriate

The DEA moves for summary judgment on the following grounds:  (i) Lewis has no evidence that he owns the watch, and (ii) it is undisputed that the DEA provided proper notice to Lewis.  Based on the current record, the Court finds that summary judgment is inappropriate.

### 1.       Ownership of the Watch

The DEA contends that Lewis's claim must fail because he has offered no proof that he owns the watch.  Lewis responded to this argument with an affidavit in which he states that he is the owner of the watch and that he purchased the watch in Jamaica in 1994.  (See Docket No. 7, Ex. 1.)  Lewis's affidavit creates a dispute of fact regarding ownership of the watch. Accordingly, the Court will deny summary judgment.  If the government wishes to test Lewis's claim of ownership, it may do so during discovery.

### 2.       Adequacy of DEA's Notice

The Due Process Clause of the Fifth Amendment prohibits the United States from depriving any person of property without "due process of law."  In an administrative forfeiture proceeding, the government is not required to prove that the person actually received notice of the pending forfeiture.[15]  Rather, it must show that its efforts to provide notice were "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

---

[15] Dusenbery v. United States, 534 U.S. 161, 168-71 (2002); United States v. Minor, 228 F.3d 352, 358 (4th Cir. 2000).

action."[16]  Deciding whether the government's efforts were sufficient "mandates a context-specific inquiry."[17]

The government made the following efforts to notify Lewis: (i) mailed a notice to Ms. Shelton, (ii) mailed notices to the condominium where the watch was seized, (iii) published a notice in the Wall Street Journal, and (iv) mailed a notice to the Maryland Correctional Adjustment Center ("MCAC").  The government does not dispute that the notices to the condominium and to the jail were returned undelivered.  The government maintains, nevertheless, that these efforts were sufficient.[18]  The Court disagrees.

Although Ms. Shelton was apparently Lewis's girlfriend, mailing a notice to Ms. Shelton was insufficient to apprise Lewis of the proposed forfeiture.  It is clear that the DEA sent the notice to Ms. Shelton to inform her of her own right to file a claim to the jewelry, which had been seized from her condominium.[19]  Nowhere does the notice indicate that its intended recipient was Lewis.  The notice was addressed to Ms. Shelton only.  It did not tell Ms. Shelton to forward the notice to Lewis or to otherwise communicate with Lewis regarding the proposed

---

[16] Dusenbery, 534 U.S. at 168 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

[17] Minor, 228 F.3d at 358.

[18] Other than citing to cases holding that actual notice is not required, the government fails to cite to any law discussing whether the DEA's attempts to notify Lewis were sufficient. Having researched the issue, the Court finds that the case law is overwhelmingly against the DEA's position.  This case law is not difficult to find.  In fact, Lewis himself cites to some of the cases in his opposition brief.

[19] The government later agreed to return all of the jewelry, except for the watch, to Ms. Shelton.

10

forfeiture.  Accordingly, it did not constitute notice to Lewis.[20]

The DEA arrested Lewis shortly before initiating the forfeiture proceedings, and the record in Lewis's underlying criminal action reflects that Lewis was still in federal custody when the DEA mailed the notices.  Because the DEA knew that Lewis was in federal custody,[21] it was required to send the notice to Lewis in jail, and publication in the newspaper and notice by mail to the condominium were, therefore, constitutionally inadequate.[22]

Although the DEA attempted to notify Lewis in jail, the notice mailed to MCAC was returned undelivered, with the notation "GONE."  To satisfy the requirements of due process, the DEA was required, after its notice was returned, to attempt to determine where Lewis was being

---

[20] See Lopez v. United States, 201 F.3d 478, 481 (D.C. Cir. 2000) (stating that "absence of any suggestion that the notice was sent for a purpose other than informing [recipient] of her own interest in the proposed forfeiture renders the notice facially deficient as to [the plaintiff]").

[21] The DEA's papers omit any mention of where the DEA believed Lewis was residing when it mailed the notice.  Because Lewis had been ordered detained pending trial, the Court assumes, viewing the evidence in the light most favorable to Lewis, that the DEA believed that he was in pretrial detention.  This assumption is buttressed by two facts: (i) the DEA arrested Lewis a month earlier, and (ii) the DEA mailed a notice to MCAC, a state prison where federal detainees are often housed, and included Lewis's prisoner identification number on the envelope. If the DEA takes the position that it had no knowledge that Lewis was in pretrial detention, it may re-file its summary judgment motion, at the end of discovery, with evidence to that effect and an explanation regarding the efforts, if any, that it made to determine whether Lewis was detained or out on bond.

[22] See Minor, 228 F.3d at 358-59 (ruling that "publication notice and notice to a person's residence while he is imprisoned are 'mere gesture[s]'" and constitutionally inadequate); Krecioch v. United States, 221 F.3d 976, 980-81 (7th Cir. 2000) ("[T]he government violates due process when it purposely mails notice of forfeiture to the claimant's residence knowing that the claimant is incarcerated or in federal custody."); United States v. Clark , 84 F.3d 378, 381 (10th Cir. 1996) ("When the government is aware that an interested party is incarcerated, due process requires the government to make an attempt to serve him with notice in prison.").

housed and to mail the notice to that institution.[23]  Because the record fails to disclose what

efforts, if any, the DEA made to locate Lewis, the Court will deny the DEA's summary judgment

motion, without prejudice to re-filing, at the end of discovery, with an explanation of such

efforts.[24]

## IV.    Conclusion

For the above reasons, the Court will, by separate order, deny the government's motion.

Dated this ___ day of March, 2006.

Benson Everett Legg
Chief Judge

---

[23]  See Minor, 228 F.3d at 354, 357-59 (holding that United States did not provide adequate notice to prisoner when the written notice it had mailed to jail was returned undelivered); Krecioch, 221 F.3d at 980 ("[W]hen the claimant is incarcerated or in government custody, the ease of learning the claimant's location makes it in most cases 'unreasonable for the forfeiting agency to fail to ascertain the location of one it knows to be in government custody.'" (quoting Weng v. United States, 137 F.3d 709, 714 (2d Cir. 1998))); United States v. McGlory, 202 F.3d 664, 672-74 (3d Cir. 2000) (holding that when person is in federal custody, DEA must ascertain his whereabouts from the Marshals Service and mail the notice directly to him); Lopez, 201 F.3d at 480-81 (holding that when DEA knew potential claimant was in state or federal custody and notice mailed to prison was returned undelivered, DEA was required to locate him within prison system); Armendariz-Mata v. Department of Justice, 82 F.3d 679, 683 (5th Cir. 1996) (stating that when a "party is known to be in jail and can be easily located by DEA in the jail or determined to not be there," a letter to a prisoner that is returned unclaimed is not enough); Torres v. $36,256.80, 25 F.3d 1154, 1161 (2d Cir. 1994) ("[W]here the mailed notice of forfeiture is returned undelivered, the intended recipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him in order to effectuate delivery of the notice, we hold that such notice does not satisfy the requirements of the statute.").

[24]  The Court rejects the DEA's argument that because Lewis attached to his motion an exhibit identifying the forfeiture proceedings, he must have had knowledge of the proceedings during the notice period.  Simply because Lewis had the exhibit at the time he filed his motion does not mean that he had knowledge of the proposed forfeiture during the notice period more than a year earlier.